# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| WADE HICKAM, AS OWNER OF THE 2004 ) <br> SEE-DOO, FOR EXONERATION FROM OR ) <br> LIMITATION OF LIABILITY, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TERRY SEGARS, Jr. and ) <br> ALL OTHER POTENTIAL PARTIES, ) <br> ) <br>     Defendants. ) | Civil No. 3:12-cv-00964 <br> Judge Aleta A. Trauger |

## MEMORANDUM

Defendant Terry Segars, Jr. has filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (Docket No. 18), to which the plaintiff, Wade Hickam, has filed a Response in opposition (Docket No. 20). Segars has also filed a Motion to Dissolve Injunction (Docket No. 19), to which Hickam has filed a Response in opposition (Docket No. 21). Hickam has also filed a Motion for Leave to Amend Complaint (Docket No. 23), which Segars has not opposed.

For the reasons stated herein, the Motion to Dismiss will be granted, this case will be dismissed for lack of subject matter jurisdiction, the Motion to Dissolve Injunction will be granted, and the Motion to Amend will be denied as moot.

## BACKGROUND

### I. Procedural History

This case relates to an incident that occurred on May 20, 2012, in which Segars was injured in an accident involving a "Sea Doo" brand jet ski ("Sea Doo") owned by Hickam. As a

1

result of injuries sustained in that accident, Segars filed an action against Hickam (among others) in Tennessee state court. *See Terry S. Segars, Jr. v. Jon Daniel Burchfield, et al.*, Docket No. 2012-CV-1054 (Tenn. Cir. Ct. filed Aug. 3, 2012).

After Segars filed the state court action, Hickam filed this lawsuit to seek the protections afforded to vessel owners under the Limitation of Liability Act ("Limitation Act"), 46 U.S.C. § 30505 *et seq.* (2012), which, under certain conditions, limits a claimant's recovery against a vessel owner to the value of the vessel. Hickam alleged that this court had jurisdiction under (1) 28 U.S.C. § 1333 (*i.e.*, traditional admiralty jurisdiction), and/or (2) the Limitation Act itself. Pursuant to the Limitation Act and Supplemental Admiralty Rule F, Hickam posted a deposit reflecting the asserted value of the jet ski (Docket No. 8) and the court, upon Hickam's motion, issued a Notice to Potential Claimants (Docket No. 14) and issued an injunction staying the state court action (Docket No. 16).[1]

Segars has moved the court to dissolve the injunction and dismiss the case, arguing that the court lacks subject matter jurisdiction. In particular, Segars argues that (1) the case does not satisfy the jurisdictional requirements of 28 U.S.C. § 1333 and (2) the Limitation Act does not

---

[1]Under the Limitation Act and Supplemental Admiralty Rule F, a district court undertakes the following procedures:

> [T]he district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

*Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448, 121 S. Ct. 993, 148 L. Ed. 2d 931 (2001)

provide an independent basis for subject matter jurisdiction. In response, Hickam argues that the Limitation Act provides an independent basis for jurisdiction and that, even if it does not, the case satisfies the traditional requirements for admiralty jurisdiction.

Hickam has also filed a Motion for Leave to file a First Amended Complaint. The First Amended Complaint simply appears to add Victoria Hickam – Hickam's daughter – as a party plaintiff, on the basis that she, along with Hickam, "qualifies as an owner of the [jet ski]" for purposes of this action. (*See* Docket No. 23, Ex. A, First Am. Compl. at ¶ 2.) These amended allegations do not impact the court's analysis of the subject matter jurisdiction issue.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs dismissals of lawsuits for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A "facial attack" challenges the sufficiency of the plaintiff's allegations, in which all well-pleaded factual allegations in the complaint are taken as true; and a "factual attack" challenges the actual fact of subject matter jurisdiction, which is analyzed under summary judgment standards. *Am. Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). When considering a factual attack upon the court's jurisdiction, the court may weigh the evidence, and no presumption of truth applies to the plaintiff's factual allegations. *Gentek*, 491 F.3d at 330. "When a factual attack, also known as a 'speaking motion,' raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Id.* "In its review, the district court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to

3

resolve jurisdictional facts." *Id.*

When subject matter jurisdiction has been challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Wisecarver v. Moore*, 489 F.3d 747, 749 (6th Cir. 2007). Here, Segars characterizes his challenge as a "factual attack" (*see* Docket No. 18 at p. 3), in support of which he has filed an uncontroverted affidavit on his own behalf (Docket No. 18, Ex. A). By contrast, notwithstanding his burden to establish subject matter jurisdiction, Hickam has not filed any evidentiary materials on his own behalf. Neither party has sought leave to conduct discovery or to have a hearing on the issue of subject matter jurisdiction. Therefore, the court will rule on the evidentiary record before it, which consists solely of the uncontroverted facts stated in the Segars Affidavit.

## II.     Background Facts

On May 20, 2012, Hickam's daughter and several other "young adults," including Jon Daniel Burchfield, Christopher Luke Wilson, and Tristan Lane, gathered on the shore of Old Hickory Lake in Gallatin, Tennessee. In an area between Burchfield's home and the shore of the lake, the Burchfield family had constructed an "earthen ramp" that rose towards the lake shore. The young adults were using the ramp as a take-off point for an inner tube that they had tethered to the Sea Doo, which was acting as a tow for the inner tube. One or more individuals would sit in the inner tube on the shore (*i.e.*, on land) while an individual operating the Sea Doo (located in the water) would pull the inner tube up the ramp towards the lake shore. The individuals using the inner tube were then projected airborne off the ramp and would land in the water near the shoreline. The area near the shoreline was shallow enough that, after landing, individuals launched up the ramp in the inner tube could stand up.

One of these "launch" attempts resulted in an unfortunate accident. While Lane and Segars sat on the inner tube, Wilson began driving the Sea Doo to pull the tether, thereby pulling the tether taut. However, suddenly and without warning, the tether snapped at the end closest to the Sea Doo and sprang back at high tension toward the inner tube, which was still located on land. The high tension tether struck Segars across the face and caused him significant injuries, including the loss of one eye and partial loss of vision in the other eye, facial fractures, and a fractured clavicle.

Segars sued the Burchfields (Jon Daniel Burchfield and his parents), Hickam, and Wilson in Tennessee state court, asserting negligence-based theories of liability. According to the state court complaint filed by Segars and the Complaint filed by Hickam here, Hickam was the record owner of the jet ski at the time of the incident.[2]

## ANALYSIS

### I. Two Potential Bases for Subject Matter Jurisdiction

Article III, § 2 of the United States Constitution vests federal courts with jurisdiction over all cases of admiralty and maritime jurisdiction. Pursuant to this grant of authority, Congress has granted federal district courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1) (2012).[3] To determine whether a case

---

[2]In the proposed First Amended Complaint, Hickam alleges that his daughter, Victoria Hickam, also qualifies as an "owner" of the Sea Doo. While this allegation presumably impacts whether Victoria Hickam could seek to limit her personal liability under the Limitation Act (assuming the Limitation Act even applies), it does not impact the court's jurisdictional analysis. Thus, the court makes no finding as to whether Victoria Hickam legally qualifies as an "owner" for Limitation Act purposes.

[3]Under the Extension of Admiralty Jurisdiction Act, passed in 1948, Congress clarified that admiralty jurisdiction extends to all cases of damage or injury "caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."

5

is subject to a federal court's admiralty jurisdiction under § 1333, the court must find that (1) the alleged tort occurred on or over "navigable waters" (commonly referred to as the "location test"); and (2) the activity giving rise to the incident had a substantial relationship to traditional maritime activity, such that the incident had a potentially disruptive influence on maritime commerce (commonly referred to as the "connection test"). *Jerome Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 538-540, 115 S. Ct. 1043, 130 L. Ed. 2d 1024 (1995).

Admiralty and maritime law includes provisions setting forth a host of special rights, duties, and procedures. *Lewis & Clark Marine*, 531 U.S. at 446. Among these provisions is the Limitation Act, which allows a vessel owner "to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Id.*; *see also In re Muer*, 146 F.3d 410, 414 (6th Cir. 1998). Hickam argues that, regardless of whether admiralty jurisdiction exists under § 1333, the Limitation Act provides an independent basis for federal jurisdiction.

## II.     Limitation Act as an Independent Basis for Jurisdiction

The Supreme Court has expressly declined to address whether the Limitation Act provides an independent basis for federal subject matter jurisdiction. *See Sisson v. Ruby*, 497 U.S. 358, 359, n.1, 110 S. Ct. 2892, 111 L. Ed. 2d 292 (1990). In *Sisson v. Ruby*, the owner of a boat had argued – as does Hickam here – that federal courts retained admiralty jurisdiction over his case both under § 1333 and under the Limitation Act independently. The Court ultimately held that the case was subject to admiralty jurisdiction under § 1333. With respect to the Limitation Act issue, the Court stated the following in Footnote 1 to the opinion:

---

46 U.S.C. § 30101 (formerly 46 App. U.S.C. § 740).

6

> Sisson has also argued throughout this litigation that the [Limitation Act] provides an independent basis for federal jurisdiction. Respondents contend that the Act does not create jurisdiction, but instead may be invoked only in cases otherwise within the maritime jurisdiction of § 1333(1). *We need not decide which party is correct*, for even were we to agree that the [Limitation Act] does not independently provide a basis for this action, § 1333(1) is sufficient to confer jurisdiction.

*Id.* at 359 n.1 (emphasis added). Accordingly, whether the Limitation Act independently confers subject matter jurisdiction is a question the Court has left open.

Although the Sixth Circuit has not yet addressed this open question, all of the sister circuits that have addressed this issue have uniformly concluded that the Limitation Act does *not* provide an independent basis for subject matter jurisdiction – *i.e.*, that the Limitation Act only applies to cases that otherwise qualify for admiralty jurisdiction. *See David Wright Charter Serv. of N. Car., Inc. v. Wright*, 925 F.2d 783, 785 (4th Cir. 1991); *Guillory v. Outboard Motor Corp.*, 956 F.2d 114, 115 (5th Cir. 1992); *In the Matter of Sisson*, 867 F.2d 341, 349350 (7th Cir. 1989), *rev'd on other grounds*, 497 U.S. 358, 110 S. Ct. 2892, 111 L. Ed. 2d 292 (1990); *Three Buoys Houseboat Vacations U.S.A., Ltd. v. Morts*, 921 F.2d 775, 779-80 (8th Cir. 1990); *Seven Resorts, Inc. v. Cantlen*, 57 F.3d 771, 772-73 (9th Cir. 1995); *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1052-54 (11th Cir. 1989). At least two published district court decisions within the Sixth Circuit have reached the same conclusion. *See Matter of Fields*, 967 F. Supp. 969, 975 (M.D. Tenn. 1997); *In re Wepfer Marine, Inc.*, 344 F. Supp. 2d 1120, 1123 (W.D. Tenn. 2004).

Without addressing these decisions, Hickam relies on an archaic Supreme Court case, *Richardson v. v. Harmon*, 222 U.S. 96, 32 S. Ct. 27, 56 L. Ed. 2d 110 (1911), in which the Court permitted the owners of a commercial steam barge that had collided with the abutment of a

7

railway draw bridge to limit their liability for damage to that bridge. Perhaps because Congress, at the time, had not yet extended admiralty jurisdiction to injuries caused by a vessel to land-based objects, *Richardson* suggested that the Limitation Act might confer an independent basis for federal jurisdiction over maritime torts involving damage that resulted on land. *Id.* at 106. However, in light of the Extension of Jurisdiction Admiralty Act of 1948 and subsequent Supreme Court precedent, no circuit court has found that *Richardson* is controlling law on the issue of whether the Limitation Act provides an independent basis for federal subject matter jurisdiction. Moreover, several circuit courts have specifically addressed and persuasively distinguished *Richardson* on multiple grounds.[4] Indeed, if *Richardson* controlled this issue, Footnote 1 in *Sisson v. Ruby*, in which the Court acknowledged the issue and declined to address it, would not have been necessary.[5]

Thus, consistent with the uniform conclusion of every sister circuit to address the issue,

---

[4]*See, e.g.*, *In the Matter of Sisson*, 867 F.2d at 348-50 (stating that "the need that inspired [*Richardson*] no longer exists," that no policy justification supports applying the Limitation Act to cases not cognizable in admiralty, and that contrary interpretation would contradict *Executive Jet* and *Foremost*); *Lewis Charters*, 871 F.2d at 1053 (characterizing Limitation Act as "hopelessly anachronistic" and stating that "[t]he reasons for the Supreme Court's liberal construction in 1911 no longer exist today"); *Seven Resorts*, 57 F.3d at 772-73 (stating that "[w]e can see little point in limiting maritime jurisdiction on the one hand to incidents substantially related to traditional maritime activities, while freely conferring such jurisdiction on the other hand to incidents utterly unrelated to traditional maritime activities merely because a party wishes to limit his liability under the [Limitation] Act").

[5]Hickam has identified one unpublished district court decision within the Sixth Circuit finding that the Limitation Act does independently confer federal jurisdiction, on the basis that *Richardson* controls the issue. *See In re: Houseboat STARSHIP II*, No. 2:05-0086, 2005 WL 3440788 (M.D. Tenn. Dec. 12, 2005). The court in *In re: Houseboat* simply treated *Richardson* as controlling, without referencing Footnote 1 in *Sisson v. Ruby* or the persuasive reasoning of the circuit court decisions finding that *Richardson* is inapposite. Accordingly, this court finds the reasoning of *In re: Houseboat* to be unpersuasive.

8

the court finds that the Limitation Act does not independently confer federal subject matter jurisdiction over this case. Thus, the court only has subject matter jurisdiction if this case otherwise satisfies the traditional requirements for admiralty jurisdiction.

### III. <u>Admiralty Jurisdiction</u>

Here, for purposes of the Motion to Dismiss, the parties do not dispute that the alleged tort occurred on navigable waters or that the Sea Doo constitutes a "vessel" for purposes of admiralty jurisdiction. *See* 1 U.S.C. § 3 (2012) (defining "vessel"); *In re Young*, 872 F.2d 176 (6th Cir. 1989) (extending definition of "vessel" to pleasure boats). However, the parties dispute whether there is a sufficient connection between the alleged incident and maritime commerce.

With respect to the connection test:

> A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Grubart*, 513 U.S. at 534 (internal quotations and citations omitted). The first part of this test turns on "a description of the incident at an intermediate level of possible generality." *Id.* at 538. In the second part of this test, the court must inquire into whether the tortfeasor's activity "on navigable waters is so closely related to activities traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* at 539-40.

Over the past several decades, the Supreme Court has issued a series of decisions outlining the contours of the connection test. Traditionally, federal courts had applied only a "locality rule," under which a court exercised admiralty jurisdiction if the incident in question occurred on navigable waters, without any consideration of contextual circumstances. However,

9

in *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 260, 93 S. Ct. 493, 34 L. Ed. 2d 454 (1972), the Court disavowed the "mechanical application of the locality test" as "not consonant with the purposes of maritime law." The Court found that, where an airplane had crashed into a navigable body of water after a flock of birds flew into the plane's engines, admiralty jurisdiction was not appropriate. In reaching that decision, the Court identified in a footnote several cases that inappropriately had "mechanically applied" the locality rule, "despite [the] lack of any connection between the wrong and traditional forms of maritime commerce and navigation." *Id.* at 255-56, 256 n.5. Among those cases was *King v. Testerman*, 214 F. Supp. 335 (E.D. Tenn. 1963), in which a water skier alleged that the operator of the pleasure boat towing him – which he had procured from his brother-in-law – had acted negligently in failing to signal to him that the boat was turning, causing him to fall and suffer an eye injury. *See Executive Jet*, 409 U.S. at 256 n.5 (citing *Testerman*, 214 F. Supp. at 336).

In *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S. Ct. 2654, 73 L. Ed. 2d 300 (1982), the Court confirmed that admiralty jurisdiction could govern incidents involving pleasure boats under appropriate circumstances. There, two pleasure boats had collided in a navigable river estuary. *Id*. at 669-70. The Court found that admiralty jurisdiction existed, because of "[t]he potential disruptive impact [upon maritime commerce] of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty law holds for navigation." *Id.* at 675; *see also Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205, 116 S. Ct. 619, 133 L. Ed. 2d 578 (1996) (watercraft collision on navigable waters "falls within admiralty's domain").

In *Sisson v. Ruby*, the Court found that admiralty jurisdiction existed, where a defective

10

Case 3:12-cv-00964   Document 25   Filed 11/27/12   Page 10 of 15 PageID #: 98

washer/dryer on a pleasure boat docked at a marina had caused a fire that burned that boat, other boats docked at the marina, and ultimately the marina itself. 497 U.S. at 367. The Court found that the burning of docked boats on a marina was a type of incident "likely to disrupt [maritime] commercial activity," and that the storage and maintenance of a vessel on navigable waters had a "substantial relationship with maritime activity." *Id.* at 365-67.

In *Grubart*, the Court further clarified the scope of the connection test. There, a contractor had been hired to replace pilings clustered around the piers of several bridges spanning the Chicago River. *Grubart*, 513 U.S. at 530. To perform that project, the contractor towed into the river two barges, one of which contained a crane. *Id.* The contractor utilized the crane to drive new pilings into the riverbed, which allegedly caused flooding of a freight tunnel that ran underneath the riverbed. *Id.* The Court found that admiralty jurisdiction existed, because (1) damage by a vessel in navigable water to an underwater structure had a potentially disruptive influence on maritime commerce, and (2) repair or maintenance work on navigable waters performed by a vessel was substantially related to traditional maritime activity. *Id.* at 538-40. In reaching this second finding, the Court characterized its previous decisions as showing that "[n]avigation of boats on navigable waters clearly falls within the substantial relationship, *Foremost* []; storing them at a marina on navigable water is close enough, *Sisson v. Ruby*; whereas in flying an airplane over the water, *Executive Jet*, as in swimming [], the relationship is too attenuated." *Grubart*, 513 U.S. at 540 (internal citations omitted).

Notably, the Court rejected the defendant's argument that the Court was interpreting the connection test too broadly:

> Grubart makes an additional claim that *Sisson* is being given too expansive a reading. If the activity at issue here is considered maritime related, it argues, then

11

> "every activity involving a vessel on navigable waters" would be a "traditional maritime activity sufficient to invoke maritime jurisdiction." But this is not fatal criticism. This Court has not proposed any radical alteration of the traditional criteria for invoking admiralty jurisdiction in tort cases, but has simply followed the lead of the lower courts in rejecting a location rule so rigid as to extend admiralty to a case involving an airplane, not a vessel, engaged in an activity far removed from anything traditionally maritime. [citing *Executive Jet*]. In the cases after *Executive Jet*, the Court stressed the need for a maritime connection, but found one in the navigation or berthing of pleasure boats, despite the facts that the pleasure boat activity took place near shore, where States have a strong interest in applying their own tort law, or was not on all fours with the maritime shipping and commerce that has traditionally made up the business of most maritime courts. *Sisson* [*v. Ruby*]; *Foremost* []. Although we agree with petitioners that *these cases do not say that every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction no matter what*, they do show that ordinarily that will be so.

513 U.S. at 542-43 (emphasis added) (internal citations omitted). Thus, although *Grubart* adopted a broad interpretation of the connection test, it (1) expressly relied on and reaffirmed the continuing validity of *Executive Jet*; and (2) implicitly acknowledged that, although cases involving a vessel on navigable waters "ordinarily" would implicate admiralty jurisdiction, exceptional cases involving a vessel on navigable waters could fall outside the scope of admiralty jurisdiction, depending on their facts. Accordingly, the Court's indication in *Executive Jet* that certain cases involving pleasure craft on navigable waters – such as the water skier's lawsuit against the tow boat operator in *King v. Testerman* – did not demonstrate "*any connection* between the wrong and traditional of maritime commerce and navigation," *Executive Jet*, 409 U.S. at 255-56, remains good law.

## IV.    Application

The incident at issue here does not meet either of the two prongs of the connection test. At an intermediate level of generality, the incident involves the use of a vessel to pull a land-based object onto the shoreline of a navigable body of water. Hickam has not established that

this is a type of incident that could have a disruptive impact on maritime commerce. As an initial matter, Hickam has not even established that *any* maritime commercial activity takes place on the lake in the first place; thus, the court has no evidence that there was any maritime commercial activity with which the incident conceivably could have interfered. Even if there were evidence of some form of commercial activity on the lake, Hickam has not produced any evidence supporting the traditional justifications for this prong of the connection test, such as an incident in open water that could require "search and rescue" operations by the Coast Guard and/or that could impede commercial traffic on a navigable waterway.[6]

Furthermore, even if the first prong of the connection test were met, the "general character" of the activity giving rise to Segars' accidental injury does not show a "substantial relationship to traditional maritime activity." The incident involved young adults utilizing a privately owned pleasure craft at the shoreline to pull a land-based inner tube onto the shoreline, landing at a depth so shallow that they could stand in it. Unlike other cases in which admiralty jurisdiction over pleasure craft accidents has been found, the incident here does not involve a collision between the pleasure craft and some other person or object – *i.e.*, negligent operation of

---

[6]*See, e.g.*, *Taghadomi v. United States*, 401 F.3d 1080, 1082 (9th Cir. 2005) (admiralty jurisdiction existed, where plaintiff's rented kayak had capsized, plaintiff washed up on an island, and Coast Guard responded to search for him); *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1129 (9th Cir. 2009) (admiralty jurisdiction existed, where plaintiff was injured when flung from a speeding jet ski in open water, requiring transportation back to land and on-shore treatment by paramedics); *Bodnar v. Hi-Lex Corp.*, 919 F. Supp. 1234, 1238-39 (N.D. Ind. 1996) (first prong of *Grubart* test met, where motorboat operator had negligently steered boat toward fallen water skier and injured him with boat propellers in open water, because "such an accident might require heroic rescue attempts and other emergency measures that could severely restrain commercial traffic through the area"); *cf. H20 Houseboat Vacations Inc. v. Hernandez*, 103 F.3d 914, 916-17 (9th Cir. 1996) (admiralty jurisdiction did not exist, because injuries from emission of carbon monoxide encapsulated within houseboat tied to shore "did not have the potential to disrupt maritime commerce").

13

the pleasure craft causing a collision – injuries to a passenger on the craft due to allegedly negligent navigation of the craft, or a product defect in the craft that could endanger passengers on navigable waters.[7]  Indeed, this case has even less connection to traditional maritime activity than the circumstances presented in *Testerman*, which the Supreme Court has identified as a case in which admiralty jurisdiction was not appropriate.  *See also Webster v. Roberts*, 417 F. Supp. 346, 347 (E.D. Tenn. 1976) (adopting same interpretation of *Executive Jet* Footnote 5).

Hickam has identified several post-*Grubart* cases in which courts outside of the Sixth Circuit have exercised admiralty jurisdiction over cases involving jet skis, water skis, and/or recreational boating.[8]  Leaving aside the limited persuasive weight of these decisions, only one of which is published, each case presented circumstances bearing a substantial relationship to traditional maritime activity that is not present here.  Thus, even granting these decisions some persuasive weight, they are readily distinguishable.

Although a case involving navigation of a vessel on navigable waters "ordinarily" falls

---

[7]*See, e.g.*, *Foremost*, 457 U.S. at 669 (collision between two pleasure boats); *Bodnar*, 919 F. Supp. at 1240 (collision between boat and fallen water skier); *Mink v. Genmar Indus., Inc.*, 29 F.3d 1543, 1545-47 (11th Cir. 1994) (passenger slammed into deck of craft operated at a high speed); *Anderson v. Whittaker Corp.*, 692 F. Supp. 764, 767-68 (W.D. Mich. 1998)*, aff'd in part, rev'd in part on other grounds*, 894 F.2d 804 (6th Cir. 1990) (products liability lawsuit cognizable in admiralty, where plaintiff alleged defective manufacture and design of boat).

[8]*See In re Aramark Sports & Entm't Servs.*, No. 2:09-CV-637-TC, 2012 WL 3776859, at *2-*3 (D. Utah Aug. 29, 2012) (powerboat sank in middle of lake and all passengers died from drowning or from hypothermia); *Waggoner v. Nags Head Water Sports, Inc.*, No. 97-1394, 141 F.3d 1162, 1998 WL 163811, at *1 (4th Cir. Apr. 6, 1998) (passenger on jet ski injured when negligently maintained jet ski malfunctioned, causing jet ski to rapidly accelerate at high rate of speed and throwing passenger from craft); *Charnis v. Watersport Pro, LLC*, No. 2:07-cv-00623-RLH-GWF, 2009 WL 2581699, at *1-*3 (D. Nev. May 1, 2009) (instructor of wakeboarding excursion, under influence of drugs and alcohol, negligently injured wakeboarder by using boat to drive boat "wake" waves into wakeboarder, causing him to fall); *Dinenno v. Lucky Finn Water Sports, Inc.*, 837 F. Supp. 2d 419, 421 (D. N.J. Nov. 4, 2011) (two waverunners collide).

14

within admiralty jurisdiction, the circumstances presented here are exceptional, and Hickam has not met his burden to establish that the incident satisfies either prong of the *Grubart* test. Indeed, Hickam has not presented any evidence showing that the incident at issue here realistically bears a "substantial relationship" to maritime commerce. Accordingly, the court finds that it does not have subject matter jurisdiction over this case.

V.    **Motion to Amend and Motion to Dissolve Injunction**

With respect to the Motion to Amend, the amended allegations have no bearing on the court's jurisdictional analysis. Because the court does not have subject matter jurisdiction over this case, the court will deny the Motion to Amend as moot. Furthermore, because the court has determined that it does not have subject matter jurisdiction over this dispute, the court will dissolve the injunction restraining the state court proceedings.

## CONCLUSION

For the reasons stated herein, the Motion to Dismiss for Lack of Subject Matter Jurisdiction will be granted, the Motion to Dissolve Injunction will be granted, the Motion to Amend will be denied as moot, and Hickam's claims will be dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge